UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SIERRA CLUB
85 Second St. 2nd Floor
San Francisco, CA 94105

Plaintiff,

v.

LISA P. JACKSON, in her official capacity as Administrator,
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460,

Defendant.

Civil Action File No.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I. INTRODUCTION

1. Plaintiff Sierra Club brings this Clean Air Act citizen suit to compel the United States Environmental Protection Agency to undertake overdue mandatory duties. Specifically, Defendant, Lisa P. Jackson, in her official capacity as Administrator of the United States Environmental Protection Agency ("EPA"), has failed to take final action, and publish notice of that action in the Federal Register, under 42 U.S.C. § 7410(k)(2) and (3), on State Implementation Plan ("SIP") submittals by Connecticut and Wyoming. These include a Connecticut submittal addressing the attainment demonstration requirements of the nonattainment SIP for the Greater Connecticut 1997 ozone National Ambient Air Quality Standard ("NAAQS") nonattainment area, and a Wyoming submittal addressing the

infrastructure SIP requirements of Clean Air Act sections 110(a)(2)(A)-(C), (E)-(H), and (J)-(M) for the 1997 fine particulate ("PM2.5") NAAQS. Accordingly, Plaintiff SIERRA CLUB brings this action against Defendant LISA P. JACKSON, in her official capacity as EPA Administrator, to compel her to perform her mandatory duties.

## II. JURISDICTION, VENUE AND NOTICE

2. This action is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act). An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 506 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

3. This civil action is brought against an officer of the United States acting in her official capacity. EPA is headquartered in this judicial district. Defendant Lisa P. Jackson officially resides in the District of Columbia. In addition, a substantial part of the events or omissions giving rise to the claims in this case occurred in the District of Columbia. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

4. On June 18, 2012, Plaintiff Sierra Club mailed two (2) notice of intent to sue letters to Defendant, via certified mail, return receipt requested, advising Defendant that Plaintiff intended to sue Defendant for Defendant's failure to act (as alleged herein) in such actions were not remedied. Defendant received Plaintiff's notice of intent to sue letters as indicted by the return receipt cards. More than sixty days have passed since Defendant received Plaintiff's

notice of intent to sue letters. To date, Defendant has not remedied the violations alleged in this Complaint. Therefore, a present and actual controversy exists.

## III. PARTIES

5. Plaintiff SIERRA CLUB is a non-profit public-benefit corporation originally formed in 1892 with more than 600,000 members in the United States and with one or more chapters in every state. Sierra Club's purpose includes " to practice and promote responsible use of the earth's ecosystem and resources; to enlist and to educate humanity to protect and to restore the quality of the natural and human environment, and to use all lawful means to carry out these objectives." Sierra Club activities include hiking, canoeing, caving, swimming, fishing, nature study, and advocacy for the improvement and protection of water quality and air quality across the country, including Connecticut and Wyoming.

6. Sierra Club's members live, work, recreate, travel and engage in economic and other activities in and around the areas at issue in this case and will continue to do so on a regular basis. Sierra Club's members are adversely affected by exposure to ozone and PM2.5 in and around these areas. Ozone and PM2.5 in the affected areas threatens and harms, and will continue to threaten and harm, the health and welfare of Sierra Club's members. Sierra Club members' livelihoods and everyday activities as well as their ability to enjoy the aesthetic qualities and recreational opportunities is diminished in the affected areas due to impacts from ozone and PM2.5 pollution. The adverse effects of such pollution include actual and/or threatened harm to their health, their families' health, their professional well-being, educational and economic interests, and their aesthetic and recreational enjoyment of the environment in and around these areas.

7. EPA's failure to timely perform the mandatory duties described herein also adversely affects Sierra Club, as well as its members, by depriving them of procedural protection and opportunities, including public notice and the opportunity to comment, as well as information to which they are entitled under the Clean Air Act. The failure of EPA to perform these mandatory duties also creates uncertainty for Sierra Club's members as to whether they are exposed to excess air pollution.

8. Because Defendant has not taken final action on certain provisions of the SIP submittals as alleged herein, Sierra Club and its members cannot be certain that 1997 ozone and the PM2.5 SIPs for the affected states conform with the requirements of the Clean Air Act.

9. The Clean Air Action violations alleged in this Complaint have injured and will continue to injure the interests of Sierra Club and its members, unless and until this Court grants the requested relief. Granting the relief requested in this lawsuit would redress these injuries by compelling EPA action to improve air quality, provide more certainty about air pollution as well as provide the requisite procedural opportunities and information that Sierra Club and its members have not obtained because of Defendant's failure to act.

10. Defendant LISA P. JACKSON is the Administrator of the United States Environmental Protection Agency ("EPA"). In that role Administrator Jackson has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

## IV. STATUTORY FRAMEWORK

11. The Clean Air Act aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). Congress enacted the Clean Air Act in part to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring

that the air we breathe throughout the Nation is wholesome once again." H.R.Rep. No. 1146, 91st Cong., 2d Sess. 1, 1970 U.S. Code Cong. & Admin. News 5356, 5356.

12. To help achieve this goal, the Clean Air Act, including the 1990 amendments, establishes a partnership between EPA and the states for attainment and maintenance of national air quality goals. *See* 42 U.S.C. §§ 7401-7515.

13. Pursuant to the Clean Air Act, EPA has set National Ambient Air Quality Standards (NAAQS) to limit levels of "criteria pollutants," including ozone and fine particulate matter. *See* 40 C.F.R. Part 50.4-50.13. The NAAQS establish maximum allowable concentrations in the air for each pollutant and are designed to protect the public from being exposed to levels of air pollutants that EPA has found to have significant adverse health and welfare impacts.

12. The Clean Air Act requires all areas of the country to meet NAAQS. 42 U.S.C. §7409-7410.

13. In order to achieve this goal, States, or regions within a state, must adopt a pollution control plan (known as a State Implementation Plan ("SIP")) that contains enforceable emissions limitations necessary to attain the NAAQS and meet other applicable requirements of the Clean Air Act, including ensuring attainment, maintenance and enforcement of the NAAQS. 42 U.S.C. §§ 7410(a)(1), (a)(2)(A); § 7401(a)(1), (k).

14. EPA is required to determine whether a SIP submittal from a state is administratively complete within 60 days of EPA's receipt of the SIP submittal. 42 U.S.C. § 7410(k)(1)(B). However, if six months after state submits a SIP submittal, EPA has not made a determination of whether or not the SIP submittal is administratively complete, the SIP submittal is deemed by operation of law as administratively complete. 42 U.S.C. § 7410(k)(1)(B).

15. Within 12 months of a determination that a SIP submittal is administratively complete, either by EPA or by operation of law, EPA must take final action on the SIP submittal by approving in full, disapproving in full, or approving in part and disapproving in part. 42 U.S.C. § 7410(k)(2) and (3).

## V. GENERAL ALLEGATIONS

16. EPA has failed to perform certain mandatory duties required by the Clean Air Act, including the failure to take final action, and publish notice of that action in the Federal Register, on State Implementation Plan submittals as required by 42 U.S.C. § 7410(k)(2) and (3) on (a) Connecticut SIP submittal for the 1997 ozone NAAQS nonattainment area of Greater Connecticut, and (b) Wyoming submittal addressing the infrastructure SIP requirements of the Clean Air Act, sections 110(a)(2)(A)-(C), (E)-(H), and (J)-(M) for the 1997 fine particulate (PM 2.5).

### A. Ozone Pollution and Nonattainment State Implementation Plans

17. According to EPA, based on exhaustive scientific review, ozone pollution causes decreased lung function, increased respiratory symptoms, emergency department visits, hospital admissions for respiratory causes, and even death. 73 Fed. Reg. 16,436 (Mar. 27, 2008). Those most at risk from ozone pollution are children; active people, *e.g.*, runners and people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people. *Id.* at 16,440. Ozone also damages vegetation, both native and commercial crops. Id. at 16,485-16,486. Damage to native vegetation results in ecosystem damage, including diminished ecosystem services, that is, the life sustaining services that ecosystems provide to people, such as clean air, clean water and carbon sequestration. *Id.*

18. EPA revised the ozone National Ambient Air Quality Standard in 1997, replacing the 1-hour standard with an 8-hour standard. 62 Fed. Reg. 38856 (July 18, 1997).

19. Pursuant to 42 U.S.C. § 7407(d)(1)(A), areas that fail to meet the NAAQS for a pollutant are designated "nonattainment" for that pollutant, while those that meet the standard are designated "attainment." See e.g., Sierra Club v. EPA, 129 F.3d 137, 138 (D.C. Cir. 1997).

20. In implementing the 1997 ozone standard, EPA created two categories of nonattainment areas: "subpart 1" for areas designated nonattainment under Title I, Part D subpart 1 of the Clean Air Act, 42 U.S.C. §§ 7501-7509a, and "subpart 2" for areas designated nonattainment under Title I, Part D, subpart 2 of the Clean Air Act, 42 U.S.C. §§ 7511-7511f. See 69 Fed. Reg. 23858 (April 30, 2004).

21. The Greater Connecticut area was designated nonattainment for the 1997 ozone standard under subpart 1. 69 Fed. Reg. at 23892.

22. For areas designated nonattainment, the state must submit a SIP showing how it plans to reduce the air pollution levels to below the NAAQS. *See South Coast Air Quality Management Dist. v. EPA*, 472 F.3d 882, 887 (D.C. Cir. 2006) (discussing ozone nonattainment requirements found in 42 U.S.C. §§ 7511-7511f that apply to areas failing to reach attainment by the 1990 Clean Air Act Amendments); see also *Sierra Club v. EPA*, 129 F. 3d at 138 ("EPA must establish . . . a schedule by which the state must submit a state implementation plan revision that complies with the requirements for nonattainment areas in order to attain the National Ambient Air Quality Standards. . .") (citation omitted). These are often referred to as "nonattainment" state implementation plans.

23. On February 1, 2008 Connecticut submitted the attainment demonstration requirement of the nonattainment SIP for the Greater Connecticut 1997 ozone nonattainment area. *See* 75 Fed. Reg. 30,310, 30,311 (June 1, 2010).

24. Either EPA or operation of law deemed Connecticut's submittal administratively complete by no later than August 1, 2008. 42 U.S.C. 7410(k)(1)(B).

25. Pursuant to 42 U.S.C. §7410(k)(2) and (3), EPA was required to take final action on Connecticut's submittal by approving in full, disapproving in full, or approving in part and disapproving in part by August 1, 2009. EPA has failed to do so, in violation of its mandatory duty.

**B. Fine Particulate Pollution and Infrastructure State Implementation Plans**

26. Fine particulate matter is "produced chiefly by combustion processes and by atmospheric reactions of various gaseous pollutants," thus "[s]ources of fine particles include…motor vehicles, power generation, combustion sources at industrial facilities, and residential fuel burning." 71 Fed. Reg. 61144, 61146 (Oct. 17, 2006). The effects of PM2.5 on humans are profound. For example, long-term exposure has been associated "with an array of health effects, notably premature mortality, increased respiratory symptoms and illnesses (*e.g.*, bronchitis and cough in children), and reduced lung function." 62 Fed. Reg. 38653, 38668 (July 18, 1997). Moreover, PM2.5 adversely affects our natural surroundings. For example, regional haze is caused in part by particulates in the air scattering sunlight. EPA, "Haze- How Air Pollution Affects the View" (April 1999) (available at http://www.epa.gov/ttn/oarpg/t1/fr_notices/haze.pdf).

27. EPA revised the NAAQS for particulate matter in 1997. 62 Fed. Reg. 38652 (July 18, 1997).

28. The Clean Air Act requires each state to submit a state implementation plan for every promulgation or revision of a NAAQS, within three years of that standard's promulgation or revision, that provides for the "implementation, maintenance, and enforcement" of the standard. 42 U.S.C. § 7410(a)(1). These are often referred to as "infrastructure" state implementation plans.

29. An infrastructure state implementation plan submittal must meet the requirements listed under 42 U.S.C. § 7410(a)(2). See 42 U.S.C. §§ 7410(a)(2)(A)-(M).

30. On November 21, 2008, either EPA or operation of law deemed administratively complete a Wyoming submittal of Clean Air Act section 110(a)(2)(A)-(C), (E)-(H), and (J)-(M) infrastructure SIP requirements for the 1997 PM2.5 National Ambient Air Quality Standard. *See* EPA, Status of State SIP Infrastructure Requirements—Wyoming: PM2.5 (1997) Infrastructure Requirements (available at http://www.epa.gov/air/urbanair/sipstatus/reports/wy_infrabypoll.html#x110_a__2__pm-2.5__1997_) (last viewed June 27, 2012).

31. The Clean Air Act requires EPA to determine whether any state implementation plan submittal—nonattainment, infrastructure, or otherwise—is administratively complete. 42 U.S.C. § 7410(k)(1)(B). EPA must make this determination by "no later than 6 months after the date, if any, by which a State is required to submit the plan or revision." *Id.*

32. EPA has a mandatory duty to take final action on any administratively complete state implementation plan submittal by approving in full, disapproving in full or approving in part and disapproving in part within 12 months of the date the submittal is deemed administratively complete. 42 U.S.C. § 7410(k)(2) and (3).

33. EPA has shown that it is capable of prompt final action on state submittals. In 2007, EPA recently approved a re-designation request submitted by Georgia in only three months. *See* 72 Fed. Reg. 53432 (Sept. 19, 2007). In light of this—and of the grave consequences of ozone and PM2.5 pollution—EPA should not delay in taking the required final actions described below.

## VI. CLAIMS FOR RELIEF

### CLAIM ONE

### FAILURE TO PERFORM A NON-DISCRETIONARY DUTY TO ACT TO TAKE FINAL ACTION UNDER 42 U.S.C. §7410(k)(2) AND (3) ON STATE IMPLEMENTATION PLANS

**(Failure to take final action on administratively complete submittal by Connecticut.)**

34. Plaintiff incorporates by reference paragraphs 1 through 33.

35. The Clean Air Act requires EPA to determine whether any state implementation plan submittal is administratively complete. 42 U.S.C. 7410(k)(1)(B).

34. If, six months after a state submits a SIP, EPA has not made the completeness finding and has not found the submittal to be incomplete, the submittal is deemed administratively complete by operation of law. *Id*.

35. EPA must take final action on an administratively complete submittal by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date of the submittal's completeness finding. 42 U.S.C. § 7410(k)(2) and (3).

36. On February 1, 2008 Connecticut submitted the attainment demonstration requirements for the Greater Connecticut 1997 ozone nonattainment area. *See* 75 Fed. Reg. 30,310, 30,311 (June 1, 2010).

37. Either EPA or operation of law deemed Connecticut's submittal administratively complete by no later than August 1, 2008. 42 U.S.C. 7410(k)(1)(B).

38. EPA has a mandatory duty to take final action on Connecticut's submittal by no later than August 1, 2009. 42 U.S.C. § 7410(k)(2) and (3).

39. EPA has failed to perform this mandatory duty.

## CLAIM TWO

## FAILURE TO PERFORM A NON-DISCRETIONARY DUTY TO ACT TO TAKE FINAL ACTION UNDER 42 U.S.C. §7410(k)(2) AND (3) ON STATE IMPLEMENTATION PLANS

**(Failure to take final action on administratively complete submittal by Wyoming.)**

40. Plaintiff incorporates by reference paragraphs 1 through 39.

41. The Clean Air Act requires EPA to determine whether any state implementation plan submittal is administratively complete. 42 U.S.C. 7410(k)(1)(B).

42. If, six months after a state submits a state implementation plan, EPA has not made the completeness finding and has not found the submittal to be incomplete, the submittal is deemed administratively complete by operation of law. *Id*.

43. EPA must take final action on an administratively complete submittal by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date of the submittal's completeness finding. 42 U.S.C. § 7410(k)(2) and (3).

44. On November 21, 2008, either EPA or operation of law deemed administratively complete a Wyoming submittal of Clean Air Act section 110(a)(2)(A)-(C), (E)-(H), and (J)-(M) requirements for the 1997 PM2.5 NAAQS. *See* EPA, Status of State SIP Infrastructure Requirements—Wyoming: PM2.5 (1997) Infrastructure Requirements (available at

http://www.epa.gov/air/urbanair/sipstatus/reports/wy_infrabypoll.html#x110_a__2__pm-2.5__1997_) (last viewed June 27, 2012).

45. EPA has a mandatory duty to take final action on Wyoming's submittal of Clean Air Act section 110(a)(2)(A)-(C), (E)-(H), and (J)-(M) requirements for the 1997 PM2.5 NAAQS by no later than November 21, 2009. 42 U.S.C. § 7410(k)(2) and (3).

41. EPA has failed to perform this mandatory duty.

**REQUEST FOR RELIEF**

WHEREFORE, Sierra Club respectfully requests that the Court:

A. DECLARE that Defendant is in violation of the Clean Air Act with regard to her failure to perform each mandatory duty listed above;

B. ORDER Defendant to take final action on the (a) Connecticut submittal addressing the attainment demonstration requirements of the nonattainment SIP for the Greater Connecticut 1997 ozone NAAQS nonattainment area, and (b) Wyoming submittal addressing the infrastructure SIP requirements of Clean Air Act sections 110(a)(2)(A)-(C), (E)-(H), and (J)-(M) for the 1997 fine particulate ("PM2.5") NAAQS.

C. RETAIN jurisdiction of this matter for purposes of enforcing the Court's order;

D. AWARD Plaintiff its reasonable costs of litigation, including attorneys' and expert witness fees; and

E. GRANT such further relief as the Court deems proper.

Respectfully submitted,

*/s/ Robert Ukeiley*

Robert Ukeiley
DDC Bar No. MD 14062
Law Office of Robert Ukeiley
435R Chestnut Street, Ste. 1

Berea, KY 40403
Tel: (859) 986-5402
Fax: (866) 618-1017
Email: rukeiley@igc.org

Counsel for Sierra Club

Dated: November 28, 2012